IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 8, 2021

## MARC BAECHTLE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 12-01214      J. Robert Carter, Jr., Judge**
_____

### No. W2020-01429-CCA-R3-PC
_____

The Petitioner, Marc Baechtle, was convicted of rape of a child, aggravated sexual battery, and rape. The trial court dismissed the aggravated sexual battery and rape convictions due to statute of limitations and ultimately imposed a 25-year sentence for the rape of a child conviction. On appeal, the Petitioner asserts that he received ineffective assistance of counsel, alleging that trial counsel advised him not to testify and failed to impeach a witness. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Caleb J. Sanders, Memphis, Tennessee, for the Petitioner, Marc Baechtle.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Amy Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A Shelby County grand jury indicted the Petitioner on rape of a child, aggravated sexual battery, rape, and statutory rape by an authority figure. State v. Marc Baechtle, No. W2014-01737-CCA-R3-CD, 2016 WL 1564128, at *1 (Tenn. Crim. App. Apr. 15, 2016), perm. app. denied (Tenn. Sept. 22, 2016). The indictment stemmed from the Petitioner's "inappropriate physical contact with the minor victim ("the victim"), the daughter of the [Petitioner's] girlfriend." Id. At the time of the indictment, the Petitioner was already serving a 15-year sentence in Florida as part of a plea agreement, in which he pleaded

guilty to six counts of sexual battery and lewd and lascivious conduct involving the victim. Id.

At trial, the victim testified that she and her mother moved into the Petitioner's house in the fall of 2000 when she was ten years old. Id. at *4. She explained that her mother worked until 7:00 p.m., and she was home alone with the Petitioner from the time she rode the school bus home until her mother arrived home. Id. The victim testified that the sexual abuse began one day while the Petitioner was watching pornography and had the victim watch it with him, while he "touched the victim over her clothing[.]" Id. Between the victim's 11th birthday on July 29, 2001, and the birth of her sister on August 26, 2001, the abuse occurred daily. Id. at *5. The victim testified that a "typical day" consisted of her mother "leaving for work in the morning, after which she and the [Petitioner] would work out at the gym." Id. Then, the Petitioner would then take her to "the pool and tan," followed by "eating a burrito at a Sonic located next to the gym." Id. After eating, the Petitioner and the victim would return home and "watch porn together." Id. The victim stated that she and the Petitioner would act out what they watched together, elaborating that the Petitioner would "go down on" her. Id.

The victim testified about an occurrence in the fall of 2001 when she and the Petitioner watched pornography while her newborn sister was sleeping and she "straddle[d the Petitioner]" and would "move back and forth." Id. By the time the victim returned to school after the summer of 2001, the abuse no longer occurred daily but happened "at least" three times a week. Id. The victim testified that the Petitioner first digitally penetrated her during the summer of 2001. Id. at *6. The victim ultimately disclosed the abuse to a camp counselor and to police after she and her mother moved to Florida. Id. at *5-7. The Defendant admitted to police during an interview that "sexual interactions occurred between the victim and him over the course of eight or nine months[.]" Id. at *3. A search warrant was executed to search the Petitioner's apartment, and the computer that the victim had described as the one she and the Petitioner watched pornography on was recovered. Id. A recording of the Petitioner "molesting the victim" was found on the computer. Id.

Following the trial, the trial court dismissed the convictions for aggravated sexual battery and rape bused upon the statute of limitations and sentenced the Petitioner to twenty-five years for the rape of a child conviction, to run consecutively to his Florida sentences. Id. at *7. On direct appeal, this court affirmed the Petitioner's conviction for rape of a child. Id. at *15. The Petitioner filed a pro se petition for post-conviction relief on September 19, 2017, which was amended by appointed counsel on August 10, 2018. In the petition, he asserted that he had received ineffective assistance of counsel due to trial counsel's failing to conduct an adequate investigation.

**Post-conviction hearing.** At the post-conviction hearing, trial counsel testified that he had been practicing law for five years and had tried approximately ten cases at the time of the Petitioner's trial. He agreed that he had also negotiated and settled cases pending before the criminal court at the time of the Petitioner's trial. Trial counsel affirmed that although the Petitioner had been convicted of aggravated sexual battery, rape, and rape of a child, the rape of a child conviction was the only count that had not been dismissed by the trial court. Trial counsel testified that he hoped that the Petitioner would have been convicted of aggravated sexual battery as a lesser-included offense of rape of a child, which "would have dismissed after trial." He explained that he had decided to argue that the victim was over the age of 13 at the time the offenses occurred because that was "the only defense that was available" due to the Petitioner's admissions to police. In his statement to police the Petitioner had "admitted to having a sexual relationship with his step[-]daughter, but he said that she was . . . 14" years old when the offenses occurred. He agreed that the State had made an election to a specific act with regards to the rape of a child conviction and that the elections had been "framed by birthdays" of the victim and her younger sister. The Petitioner maintained that the victim was over the age of 13 when the offenses occurred. Trial counsel explained that the Petitioner told him that a specific song would play when he and the victim went to the gym and that he could prove how old the victim was based on the release date of the song. Trial counsel investigated the song but did not think it would have been helpful because the song did not prove when the abuse started, which was what was in dispute at trial, and corroborated the victim's claims.

Trial counsel agreed that he was able to keep the Petitioner's Florida convictions from the jury. Trial counsel testified that although he and the Petitioner had discussed whether he would testify at trial, the Petitioner was not "ever very interested in testifying." Trial counsel affirmed that it was his "evaluation and advice" that there was "nothing to be gained and everything to be lost" by the Petitioner testifying, since his statement to police had been "self-serving" in maintaining that the victim was over the age of 13 when the offenses occurred. Trial counsel elaborated that he advised the Petitioner that "if he got up on the stand and admitted to the jury yes, I was molesting my step-daughter, but she was 14 and not 12, [trial counsel] didn't think that would have played well." Trial counsel testified that he used an investigator in the Petitioner's case. Trial counsel and his investigator spoke to the victim's mother prior to trial, but trial counsel decided not to call her as a witness because she was "very hostile" towards the Petitioner and "would not have provided any information helpful to the theory that . . . [the victim] was 14 when this started." The jury was able to hear all of the "complaints" that the Petitioner had towards the victim's mother because he stated all of them in his police statement, which was played for the jury. Trial counsel testified that he and the investigator had investigated the victim and her family's background. He did not recall whether they found any evidence corroborating the Petitioner's claim that the victim had previously lied to the Department of Children's Services.

With respect to cross-examining the victim, who was sixteen years old at the time of trial, trial counsel testified that he had to be careful not to come across as aggressive to the jury, especially because the Petitioner admitted to abusing the victim. He agreed that there were inconsistencies in the victim's statement to police regarding her age and whether the Petitioner had "forcefully raped her anally[.]" Trial counsel elicited from the victim on cross-examination that she did not recall whether the Petitioner had ever actually anally raped her. Trial counsel affirmed that the victim's statement to police was recorded and was played for the jury. [Id.]. Trial counsel explained that his goal on cross-examination of the victim was to elicit "the things that she had previously said that were untruthful and the inconsistencies about the age." He stated that he thought he was "successful in bringing both of those things out" on cross-examination. Trial counsel highlighted that the jury was also able to hear the Petitioner's complaint about the victim previously lying to the Department of Children's Services in his recorded police statement.

On cross-examination, trial counsel testified that he did not recall whether the State presented corroborative proof of their timeline, other than the victim's testimony, at trial. He explained that his argument to the jury was that the victim's testimony was insufficient to prove her age beyond a reasonable doubt because of the inconsistencies in her statement. Trial counsel further explained that although he thought it was better if the Petitioner did not testify so that he did not have admit to being a "child molester" in front of the jury, it was "ultimately [the Petitioner's] call" and that the record would show "that he was Momonized[,] and he was advised of his rights[.]" Trial counsel denied being "embarrassed" to bring up to the jury the "Hoobastank song" that the Petitioner wanted him to investigate. He reiterated that the song had no probative value. Trial counsel again explained that he did not advise the Petitioner to testify because everything he was going to say about the victim being over 13 years old was already in the statement that was played for the jury, and he did not want the Petitioner to sit in front of the jury "admitting yes, I was having sex with my 14-year-old step-daughter." Trial counsel also reiterated that he did not call the victim's mother as a witness because she did not like the Petitioner and "did not have any information helpful" to the Petitioner.

On redirect examination, trial counsel agreed that a defense theory of the victim's mother making up the allegations would be "completely inconsistent" with the Petitioner's admission to police that he had sexual contact with the victim. He accordingly made the "strategic decision" to make "the factual dispute as narrow as possible for the jury," explaining that he did not want the jury to get "bogged down" in "all these other allegations about the victim's mother and Hoobastank and D.C.S." Trial counsel reiterated that although the Petitioner's statement to police included his admission of sexual contact, it also included his assertions that the victim was previously untruthful and that her mother was vindictive, which was "helpful" to his case. He agreed that the Petitioner testifying could have "opened the door to his prior guilty plea" in Florida involving the victim.

On February 7, 2020, the post-conviction court entered a written order denying the Petitioner's petition for post-conviction relief. In the order, the post-conviction court found that the Petitioner had not proven that counsel was deficient, noting that trial counsel "did indeed investigate the case and appeared informed of all of the material the State would produce." The Petitioner filed a motion to late-file his appeal on November 30, 2020. This court granted the motion, stating that the late-filed notice "shall be accepted as timely filed as of the date of this order." See Order, Marc Baechtle v. State, No. W2020-01429-CCA-R3-PC (Tenn. Crim. App. Dec. 15, 2020).

## ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective by failing to impeach the victim with the previously-mentioned Hoobastank song during cross-examination and by advising the Petitioner not to testify. The State responds that the Petitioner has failed to demonstrate that he suffered any prejudice by trial counsel's alleged ineffectiveness. We agree with the State.

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents a mixed question of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert, 342 S.W.3d at 485). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). "As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

The right to effective assistance of counsel is protected by the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v.

Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

Initially, we must address the State's contention that the Petitioner has waived his appeal by late-filing his notice of appeal. While we agree that the Petitioner filed his notice of appeal more than nine months after the post-conviction court entered the written order denying the Petitioner's petition, we disagree that he has waived his appeal. As we noted above, this court previously entered an order deeming the Petitioner's late-filed notice of appeal as timely. See Order, Marc Baechtle v. State, No. W2020-01429-CCA-R3-PC (Tenn. Crim. App. Dec. 15, 2020). Thus, the Petitioner's notice is considered timely-filed, and he has not waived this appeal.

We have reviewed the record and conclude that the Petitioner has failed to demonstrate deficient performance or prejudice based on trial counsel's failure to impeach the victim on cross-examination with the Hoobastank song and his advice to the Petitioner not to testify at trial. The post-conviction court found that the Petitioner had failed to show that trial counsel was deficient in his representation at trial. With respect to the Hoobastank song, trial counsel thoroughly explained at the post-conviction hearing his decision not to question the victim about it. Trial counsel stated that although he investigated the song at the request of the Petitioner, he ultimately did not question the victim about it because it would have had no probative value because the factual issue in dispute at trial was when the abuse started. Trial counsel explained that the victim hearing the song at the gym with Petitioner was not indicative of when the abuse actually started, instead only demonstrating

when the abuse was still ongoing. He also explained that he did not want the jury to get "bogged down" in extraneous information or come across as "aggressive" towards the victim. In denying the Petitioner's petition, the post-conviction court found that the song "was not a defense." Trial counsel also explained that the jury was still able to hear the Petitioner's allegations of the victim's untruthfulness in his police statement that was played for the jury, and trial counsel was able to demonstrate the inconsistencies in the victim's statement on cross-examination. The Petitioner's assertion that impeaching the victim with the song would have "enabled the victim to recall memories associated with the song" is without explanation or merit. Based on the other evidence at trial and the entirety of the victim's testimony, it is unclear how questioning her about the Hoobastank song would have led to a different result at trial, and the Petitioner has failed to demonstrate how he was prejudiced by trial counsel's failure to question the victim about the song.

With respect to the Petitioner's assertion that trial counsel was ineffective in advising him not to testify, trial counsel testified that he offered such advice because there was nothing to be gained by the Petitioner testifying. Trial counsel explained that everything that the Petitioner was going to say in his trial testimony had already been said in his statement to police, which was played for the jury. Trial counsel stated that he avoided "opening the door" to the Petitioner's Florida convictions by advising him not to testify at trial, preventing him from being cross-examined. Further, trial counsel testified that although he and the Petitioner had discussed whether he would testify, it was "ultimately" the Petitioner's decision. In denying his petition, the post-conviction court noted that the Petitioner "[i]n retrospect, now wishes he had testified." Trial counsel explained that the Petitioner was informed of his right to testify and was given a Momon hearing. Trial counsel also testified that he did not think that the Petitioner's testifying before the jury that he had sex with his step-daughter, but arguing that she was fourteen years old when it occurred, would have helped the case in anyway, especially given that the same argument was made in his statement to police. Based on our review of the record, we cannot conclude that trial counsel's advice not to testify fell below an objective standard of reasonableness. See Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). The Petitioner has not demonstrated prejudice arising from trial counsel's alleged deficiencies and is therefore not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE